UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19md2885 |
| This Document Relates to: *Wilcox*, 7:20cv4677 | Judge M. Casey Rodgers Magistrate Judge Hope T. Cannon |

# ORDER[1]

This matter is before the Court on Defendant 3M Company's motion for summary judgment. *See* ECF No. 20. On full consideration, the motion is **GRANTED IN PART and DENIED IN PART**.

## I.     Legal Standard

Summary judgment is appropriate where the record reflects there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is "material" if, under the applicable substantive law, it might affect the outcome of the case. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). A dispute of fact is "genuine" if "the evidence is

---

[1] This Order assumes the parties' familiarity with the general factual allegations and nature of this multidistrict litigation.

such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of "informing the court of the basis for its motion and of identifying those materials that demonstrate the absence of a genuine issue of material fact." *Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 840 (11th Cir. 2000) (citing *Celotex*, 477 U.S. at 323). Once that burden is met, the nonmoving party must "go beyond the pleadings" and present competent record evidence showing the existence of a genuine, material factual dispute for trial. *Celotex*, 477 U.S. at 324. In doing so, and to avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The "mere existence of a scintilla of evidence" supporting the nonmovant's case is insufficient to defeat a motion for summary judgment. *Liberty Lobby*, 477 U.S. at 252. In assessing whether a movant is entitled to summary judgment, a court must view the evidence and factual inferences drawn therefrom in the light most favorable to the non-moving party. *See id.* at 255; *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997). Ultimately, summary judgment must be entered where "the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex*, 477 U.S. at 323.

## II.   Discussion

Wilcox asserts sixteen claims against Defendant 3M Company under Maryland law arising from injuries he alleges were caused by his use of the Combat Arms Earplug version 2 ("CAEv2") during his military service. *See* Wilcox Compl., ECF No. 5.[2] Defendant moves for summary judgment on all sixteen claims. In response, Wilcox seeks dismissal of his negligence *per se* (Count XII) and unjust enrichment claims (Count XV).[3] *See* Pl. Resp., ECF No. 27 at 1. The Court addresses the remaining claims in turn.

### A.   Causation

Defendant challenges several aspects of Wilcox's evidence on causation grounds. First, Defendant argues that all of Wilcox's claims fail due to lack of admissible expert testimony on specific causation. Second, Defendant argues that

---

[2] The parties agree that Maryland law applies to Wilcox's claims. *See* ECF No. 15.

[3] Wilcox's response brief states that he "stipulates to the dismissal of" his negligence *per se* and unjust enrichment claims, pursuant to Fed. Rule Civ. P. 41(a)(1)(A)(ii). *See* Pl. Resp., ECF No. 27 at 1. However, Rule 41(a) only permits the dismissal of an entire action, not individual claims. *Rosell v. VMSB, LLC*, 67 F. 4th 1141 (11th Cir. 2023). Nevertheless, Wilcox's negligence *per se* and unjust enrichment claims have clearly been abandoned; therefore, summary judgment is granted in favor of Defendant on those claims. *See Irizarry v.* 3M, No. 8:20cv22444, ECF No. 25 at 3 n.3 (N.D. Fla. June 22, 2023); Am. *S. Homes Holdings, LLC v. Erickson*, No. 4:21cv95, 2023 WL 4032657, at *2 n.1 (M.D. Ga. June 15, 2023) (granting summary judgment to plaintiff on counterclaim that had "clearly been abandoned" where parties had stipulated to its dismissal but other individual claims remained). For the avoidance of doubt, this ruling does not preclude Wilcox from offering alleged statutory violations by Defendant as evidence of negligence (as opposed to negligence *per se*) at trial. *See Blackburn Ltd. P'ship v. Paul*, 90 A.3d 464, 479 (Md. 2014) (quoting *Absolon v. Dollahite*, 831 A.2d 6, 11 (2003)) ("The settled rule in Maryland is that a statutory violation is evidence of negligence. It does not constitute negligence *per se*, unless a statute expressly makes it so.").

Wilcox's design defect claims (Counts I, II, and XI) fail because he cannot establish that a specific defect in the CAEv2 proximately caused his alleged injuries. Last, Defendant argues that Wilcox cannot establish causation for his failure to warn claims (Counts III and IV) because he cannot show that additional warnings would have caused the government not to purchase the CAEv2, or would have been seen by Wilcox, or otherwise prevented his injuries. These arguments fail.

1. **Expert Evidence on Specific Causation (*All Counts*)**

Defendant argues that summary judgment is proper on all claims due to lack of admissible expert testimony on causation. The Court has already determined that Wilcox's specific causation experts, Drs. David R. Friedmann and Lynda Wayne, provided scientifically reliable bases for their opinions that the CAEv2 caused Wilcox's auditory injuries. *See Daubert* Order, ECF No. 30. Those doctors' opinions are sufficient to raise a triable issue of fact regarding the alleged causal connection between the CAEv2 and Wilcox's injuries.

2. **Design Defect Claims (*Counts I, II, and XI*)**

Defendant's causation challenge with respect to Wilcox's design defect claims is somewhat of a variation of the previous argument—namely, that Wilcox "has failed to identify, with expert testimony, a *specific defect* in the [CAEv2] that proximately caused his injuries, alleging instead that his injuries arose because of

the device generally." *See* Def. Mot., ECF No. 20 at 8 (emphasis modified from original). This is incorrect.

In Maryland, design defect claims—whether based in strict liability or negligence—require proof of "a causal relationship between the [alleged] defect and the [plaintiff's] injury." *Laing v. Volkswagen of Am., Inc.*, 949 A.2d 26, 40 (Md. Ct. Spec. App. 2008) (quoting *Ford Motor Co. v. Gen. Accident Ins. Co.*, 779 A.2d 362, 370 (Md. 2001). Here, Wilcox has made that showing. More specifically, Wilcox has designated at least four experts—Richard McKinley and Drs. Moises Arriaga, Mark Packer, and Lawrence Lustig—who have offered general opinions that the various aspects of the CAEv2's design prevented proper fit and seal (*e.g.*, stem is too short, too wide, and too stiff; opposing flange contacts tragus causing imperceptible loosening), and that those alleged design defects present a risk of noise-induced auditory injury to users. *See* Pl. R. 26 Expert Disclosures, ECF No. 21-1 at 2-4. Defendant has not challenged the reliability of those experts' general causation opinions in Wilcox's case, and the Court has already found them scientifically reliable, admissible, and sufficient to establish triable issues of fact for purposes of summary judgment. *See, e.g.*, *In re 3M*, No. 3:19md2885, ECF No. 1680. Wilcox's specific causation experts, Drs. David R. Friedmann (an otolaryngologist and neurotologist) and Lynda Wayne (an audiologist), demonstrably considered those general causation opinions and much of the evidence

on which the opinions were based (*e.g.*, Flange Report, CID Report, internal corporate documents) in the context of their many years of experience with hearing protection, and agreed, *from a clinical perspective*, that the CAEv2's alleged fit and seal inadequacies caused Wilcox's noise-induced auditory injuries. *See* Friedmann Rep., ECF No. 25-2 at 1-2, 8-9, 12-14; Wayne Rep., ECF No. 26-1 at 1-2, 7-8, 13-15; *see also In re Ethicon Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 2016 WL 8788207, at *4 (S.D. W. Va. Aug. 26, 2016) ("A single expert need not provide all the pieces of the puzzle for their testimony to be useful to the jury in determining the ultimate issues in the case."); *In re Wright Med. Tech., Conserve Hip Implant Prods. Liab. Litig.*, 127 F. Supp. 3d 1306, 1320 (N.D. Ga. 2015) ("The facts and data upon which an expert may rely in reaching an expert opinion includes the opinions and findings of other experts, if experts in their respective field would reasonably rely on other expert's opinions and findings."); *Eberli v. Cirrus Design Corp.*, 615 F. Supp. 2d 1357, 1364 (S.D. Fla. 2009) ("[A]n expert's testimony may be formulated by the use of the facts, data and conclusions of other experts, [but] such expert must make some findings and not merely regurgitate another expert's opinion."). Taken together, this expert evidence raises genuine disputes of material fact regarding whether the CAEv2's specific alleged defects (again, alleged fit and seal inadequacies due to the stem being too short, wide, and stiff, and the opposing flange

contacting the wearer's tragus and causing imperceptible loosening) proximately caused Wilcox's auditory injuries.

### 3. Failure to Warn Claims (*Counts III, IV, and XI*)

Defendant argues that Wilcox cannot establish causation for his failure to warn claims because he cannot show that additional warnings would have caused the government not to purchase the CAEv2, would have been seen and relied on by Wilcox, or otherwise prevented his injuries. These arguments fail.

To establish proximate cause for a failure to warn claim, a plaintiff must show that an adequate warning would have been read and heeded, which would have prevented his alleged injury. *See Eagle-Picher Indus., Inc. v. Balbos*, 604 A.2d 445, 468-69 (Md. 1992). However, Maryland courts have "long recognized a presumption that plaintiffs would have heeded a legally adequate warning had one been given." *U.S. Gypsum Co. v. Mayor & City Council of Baltimore*, 647 A.2d 405, 413 (Md. 1994) (citing *Eagle-Picher*, 326 604 A.2d at 413). The presumption may be rebutted by evidence that a warning would not have been heeded, such as with "evidence that the personalities or dispositions of the [relevant actor] were such that they clearly would have ignored warnings." *Eagle-Picher*, 604 A.2d at 469.

As an initial matter, Wilcox has produced ample evidence that Defendant did not provide *any* warnings, must less adequate written warnings, to the Army or its soldiers about the dangers associated with use of the CAEv2—dangers about which

Defendant was uniquely aware. *Compare* Flange Rep., ECF No. 27-3 (detailing alleged fit and variability problems with the CAEv2 that occur especially in "subjects with medium and large ear canal") & Berger Tr. Wayman, ECF No. 27-4 at 3 (testifying that neither the Flange Rep. nor its results were "transmitted to the military"), *with* P-GEN-68 (Wallet Card instructing only those with "very large ear canals" to fold back opposing flanges to get a better fit); *Compare* P-GEN-2294, ECF No. 27-8 at 3 (internal email explaining that "[a] shooter should not go to the range and fire a box of shells with the yellow side in") & Internal Emails, ECF No. 27-7 at 5 ("If you are at the range shooting and the guns are going off a lot…, the open position of the [CAEv2] is NOT going to provide protection."), *with* P-GEN-1013 (marketing material explaining the CAEv2 will protect soldiers' hearing from impulse noise such was weapons fire and explosives). Thus, the Court rejects Defendant's attempt to frame the proximate cause argument in terms of whether the Army and/or Wilcox would have read and heeded an "additional" or "different" warning. *See* Def. Mot., ECF No. 20 at 10. On this record, the proper question is whether Wilcox has produced sufficient evidence that if a warning had *ever* been provided, it would have been read and heeded by both the Army and him, and prevented his auditory injuries. The Court finds that he has.

First, Wilcox is entitled to the benefit of Maryland's heeding presumption, meaning it is presumed that both he and the Army would have followed a legally

adequate warning had one been provided. *See Gypsum*, 647 A.2d at 413. Defendant has offered no evidence to the contrary. *See* Def. Mot., ECF No. 20 at 8-10. The presumption alone is sufficient to establish a triable issue of fact on the issue of causation. But there is more. Wilcox also has produced affirmative evidence that the Army would not have purchased the CAEv2 for use by its soldiers, including him, had Defendant adequately warned of the dangers associated with the product's use. *See, e.g.*, Army CID Report, ECF No. 27-12; Warren Dep., ECF No. 27-13 at 2-3 (agreeing that an earplug with an NRR of 11 would "[a]bsolutely" be "harder…[i]f not impossible to sell"); Hamer Dep. (Moldex), ECF No. 27-6 (testifying that an NRR of 11 for closed end of the CAEv2 "would be insufficient"). Moreover, Wilcox testified that he was issued the CAEv2 with a written instruction "pamphlet," which he read, and he also was verbally taught how to insert the CAEv2 and when to use each side on numerous occasions by Army audiologists, drill sergeants, and/or range NCOs. *See* Wilcox Dep., ECF No. 27-11 at 2-6. Wilcox reportedly follow those instructions by using the CAEv2 in a "situational dependent" manner—wearing the green end for military noise exposures that did not require "having a conversation with someone," but switching to the yellow end when he needed to receive instructions or otherwise interact with others. *See id*. at 4-5. Thus, on this record, even absent the heeding presumption, a reasonable jury could conclude that: (1) if the Army had been adequately warned of the CAEv2's alleged

dangers, it would have declined to purchase the CAEv2; and (2) just as Wilcox heard, read, and followed the instructions actually given to him, he would have listened to, read, and heeded adequate warnings, had they been provided, which would have prevented his auditory injuries. Taken together, the heeding presumption and the record evidence are more than sufficient to raise a triable issue of fact under Maryland law regarding whether the CAEv2 proximately caused Wilcox's injuries.

### B. Express and Implied Warranty Claims (*Counts V and VI*)

Defendant argues Wilcox's breach of express and implied warranty claims fail for lack of pre-suit notice. This is incorrect. The "clear" and "express" language of Maryland's Commercial Code requires only actual "buyers" to give notice of a breach as a condition precedent to bringing a breach of warranty claim. *Fericks v. Gen. Motors Corp.*, 363 A.2d 460, 463 (Md. 1977) (interpreting pre-suit notice statute, Md. Code Ann. § 2-607); *Nemphos ex rel. C.G.N. v. Nestle USA, Inc.*, No. 1:12cv2718, 2013 WL 4501308, at *9 (D. Md. Aug. 21, 2013) (applying Maryland law and finding same).[4] Warranty beneficiaries under Md. Code Ann. § 2-318, like Wilcox, are not required to give pre-suit notice.[5] *See Frericks*, 363 A.2d at 463

---

[4] Md. Code Ann. § 2-607(3)(a) ("Where a tender has been accepted[,] [t]he buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy[.]").

[5] *See id.* at § 2-318 ("A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home or any other

(holding that third party beneficiaries "are not required by [Md. Code Ann. § 2-607] to notify the seller of a breach of warranty and are therefore not precluded from pursuing a remedy for breach" for lack of pre-suit notice); *Nemphos*, 2013 WL 4501308, at *9 (applying Maryland law and finding same). Consequently, Defendant's motion for summary judgment on Wilcox's warranty claims is denied.

C.   **Fraud Claims (*Counts VII, VIII, IX, and X*)**

Defendant argues that all of Wilcox's fraud claims—which Defendant defines to include the claims for negligent misrepresentation, fraudulent misrepresentation, fraudulent concealment, and fraud and deceit—fail for lack of evidence that he personally relied on any alleged misrepresentations by Defendant. This argument fails.

To begin with, and although it ultimately makes no difference to the result in this case, personal reliance is *not* required for Wilcox's negligent misrepresentation claim under Maryland law. Briefly, Maryland's standard for proving the reliance element of a misrepresentation claim—in particular, the need for proof of personal reliance by the plaintiff—depends on the nature of both the misrepresentation (fraudulent v. negligent) and the alleged harm (physical v. pecuniary). *See White v. Kennedy Krieger Inst., Inc.*, 110 A.3d 724, 743-44 (Md. Ct. Spec. App. 2015).

---

ultimate consumer or user of the goods or person affected thereby if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section.").

Negligent misrepresentations that allegedly "create[d] a threat or risk of physical harm" (as opposed to pecuniary harm only) do *not* require proof of the plaintiff's "direct, personal reliance" on the misrepresentation. *See id*. at 747. Instead, reliance may be established with evidence that the defendant negligently provided false information to a third-party who, acting in reliance on the information, caused physical harm to another person, like the plaintiff, "who neither hears, nor directly relies on" the information, and it was foreseeable to the defendant that physical harm of that nature would result to that class of persons. *See id*. at 748-49. In that circumstance, the element of reliance for the plaintiff's negligent misrepresentation claim is satisfied indirectly by the third-party's direct reliance on the defendant's misrepresentation. *See id*. at 748.

Fraud claims, on the other hand, do require evidence of personal reliance, although the allegedly fraudulent statement need not have made directly to the plaintiff. *See id*. at 744; *Exxon Mobile Corp. v. Albright*, 71 A.3d 30, 49-50 (Md. 2013). More specifically, indirect reliance may be shown with evidence that: (1) the defendant made misrepresentations to third-parties intending or with reason to expect that other persons also would rely and act on them; (2) the plaintiff is in the class of persons so contemplated; and (3) the plaintiff "act[ed] or refrain[ed] from acting" in reliance on the misrepresentation. *See White*, 110 A.3d at 745; *Exxon*

*Mobile*, 71 A.3d at 50.  A plaintiff who makes this showing creates a triable issue of fact on the issue of reliance.  *White*, 110 A.3d 747.

In this case, there is ample record evidence to raise a triable issue of fact as to reliance under both standards.  First, there is evidence that Defendant affirmatively misrepresented material information regarding the safety and efficacy of the CAEv2, as well the propriety of using its yellow end on a gun range, and concealed known dangers associated with the CAEv2, from both the Army and soldiers, like Wilcox.  *See, e.g.*, CAEv2 Mil. Advert., ECF No. 27-14 at 9 (representing the CAEv2 as "protective up to approximately 190 dBP" and "sufficient to cover most of the weapons in the military inventory, including shoulder-fired rockets"); CAEv2 Mil. Advert., P-GEN-977 at 3 (stating that the CAEv2 "fits most ear canals" and that the yellow end protects against "weapons fire and explosions"); *id*. at 4 (representing that "[t]he chance of permanent hearing damage or disorientation from explosion is greatly reduced or eliminated" by the yellow end of the CAEv2"); 3M Mil. Sales Powerpoint, P-GEN-1381 at 2 (representing CAEv2 as "One-Size-Fits-All"); P-GEN-2001 at 2 ("Hear the action now, hear life later."); *see also* Order, ECF No. 1280 at 14-16 (describing concealment of the Flange Report, which documented the CAEv2's alleged fit and seal defects, from the Army).  This same evidence also is sufficient to establish that Defendant intended and expected both the Army and soldiers to rely and act on the misrepresentations by purchasing, issuing,

recommending, and/or wearing the CAEv2 to protect soldiers' hearing. *See id*. There is no dispute that the Army relied on Defendant's misrepresentations and acted on them by purchasing the CAEv2, issuing it to soldiers, and instructing soldiers on its use. And there is evidence that Wilcox received verbal and written instructions from the Army regarding the safety, efficacy, and proper use of the CAEv2, and he personally relied on those instructions to protect his hearing from hazardous noise. *See* Wilcox Dep., ECF No. 27-11 at 2-6.[6] On this record, a reasonable jury could find that Defendant made affirmative misrepresentations about the CAEv2 to the Army intending and expecting both the Army and individual soldiers would rely on them, it was foreseeable to Defendant that noise-induced auditory injuries may result from reliance on the misrepresentations, Wilcox was in the class of persons Defendant intended and expected to influence with the misrepresentation (*i.e.*, a soldier), and Wilcox personally relied on the misrepresentations in wearing the CAEv2 during his military service, which resulted in noise-induced auditory

---

[6] As further evidence of personal reliance, Wilcox's brief also offers the following quote from his own declaration, which is cited as PX.19:

> Had I not been told that the CAEv2 was adequate to protect my hearing and had I been informed of the CAEv2 defects, including that it was too short for proper insertion, its tendency to imperceptibly loosen, its very low Noise Reduction Rating, and the yellow-end's inadequate protection from weapons fire, I would have sought out and used an alternative earplug that would have provided adequate protection. Had the military informed me that the CAEv2 provided less protection than Peltors or other ear plugs, I would have asked for better, safer ear plugs.

*See* Pl. Br., ECF No. 27 at 13. However, PX-19 was not attached as an exhibit on the docket; therefore, the Court did not rely on it for summary judgment purposes.

injuries. *See, e.g.*, *James v. 3M*, No. 7:20cv12243, ECF No. 29 at 5-7 (same); *Beal v. 3M*, No. 7:20cv006, ECF No. 113 at 5 (same); *Adkins v. 3M*, No. 7:20cv012, ECF No. 58 at 4-5. Because Wilcox has demonstrated reliance (including personal reliance) and Defendant has offered no other grounds for summary judgment on his negligent misrepresentation and fraud claims, the claims remain.

### D.   Consumer Protection Claim (*Count XIII*)

Defendant argues Wilcox's consumer protection claim is not actionable under Maryland's Consumer Protection Act ("MCPA") and otherwise fails because he cannot show reliance.[7] The Court disagrees, with two exceptions.

---

[7] Defendant's motion also cursorily states that Wilcox did not plead with particularity the facts underlying its alleged "unfair and deceptive trade practices" as required by Maryland law. *See* Def. Mot., ECF No. 20 at 15; *Bryan v. Koppers, Inc.*, 627 F. Supp. 3d 466, 478 (D. Md. 2022) ("[F]raud-based claims under the MCPA are subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading standard"). This argument is both untimely and fails on the merits. As to the merits, Wilcox's complaint adopts and incorporates by reference the MDL Master Long Form Complaint, which describes the alleged fraud in great detail. *See* Wilcox Compl., ECF No. 5 at 1; *In re 3M*, No. 3:19md2885, Master Long Form Compl., ECF No. 704. In any event, the Court has already found the *evidence* sufficient to establish the only disputed element of Wilcox's MCPA claim (reliance), and the Court finds no basis to evaluate whether the conduct was *pled* with sufficient particularity—years ago, at this point—when the *evidence* itself is sufficiently particular. *See Firstar Bank, N.A. v. Faul Chevrolet, Inc.*, 249 F. Supp. 2d 1029, 1043 (N.D. Ill. 2003) (same). Regarding timeliness, Rule 9(b) particularity arguments typically should be addressed through a motion filed pursuant to Rule 12(b) or (e), not on summary judgment. *See McCarthy v. Ameritech Pub., Inc.*, 763 F.3d 469, 478 n.2 (6th Cir. 2014); *Bank of Mongolia v. M&P Glob. Fin. Serv.*, No. 0:08cv60623, 2010 WL 115497111, at *5 (S.D. Fla. Sept. 3, 2010); *Puckett v. McPhillips Shinbaum*, No. 2:06cv1148, 2008 WL 906569, at *24 (M.D. Ala. Mar. 31, 2008). For these reasons, the Court declines to grant summary judgment in favor of Defendant based on any argument that the fraud-based MCPA claim fails to comply with Rule 9(b).

The MCPA permits individuals to bring an action to recover for injuries or losses sustained "as the result of" unfair or deceptive trade practices, *see* Md. Code Ann. § 13-408 (actions for damages), including affirmative misrepresentations, deception, and material omissions in connection with the sale of product, *see* Md. Code Ann. § 13-408 (unfair or deceptive trade practices defined).  Even so, not all such allegedly fraudulent conduct is actionable under the MCPA.  Claims premised on injuries caused by an alleged defect in the product's design or warning are not "the result of" unfair or deceptive practices for MCPA purposes.  *See Sacks v. Phillip-Morris, Inc.*, No. 1:95cv1840, 1996 WL 780311, at *1-2 (D. Md. 1996) (defendant's alleged misrepresentations and concealment of information about the technical feasibility of manufacturing a "fire-safe" cigarette did not "result" in decedents' deaths from a fire allegedly ignited by a non-fire-safe cigarette manufactured by defendant for MCPA purposes); *see also Murphy ex rel. Murphy v. Playtex Fam. Prods. Corp.*, 176 F. Supp. 2d 473, 483 n.9 (D. Md. 2001) (granting summary judgment on "disguised defective design claim [that] is not actionable under the" MCPA).  Only claims in which a plaintiff's injury resulted from the defendant's alleged misrepresentation itself—such as where the product allegedly did not work or perform as promised, separate and apart from any alleged product defect—are actionable under the MCPA.  *See Brown-High v. L'Oreal USA, Inc.*, No. 8:17cv276, 2017 WL 5952688, at *7 (D. Md. Nov. 29, 2017) (finding MCPA

violation "sufficiently pled" based on allegations that defendant falsely marketed hair relaxer as containing no lye, even though it actually contained lye, and plaintiff relied on the marketing when deciding to purchase defendant's relaxer, resulting in injury).

In this case, Wilcox's MCPA claim is based on three categories of allegedly fraudulent statements or conduct by Defendant: (1) misrepresentations regarding the efficacy of the CAEv2; (2) concealment of known dangers associated with the CAEv2; and (3) misrepresentations that the CAEv2's yellow end was safe for use on a gun range, when Defendant knew it was not safe to do so. Only the third category is actionable under the MCPA. This is because the third category is not premised on a problem with the design of the product; rather, the alleged problem is with Defendant's misrepresentations about when and where it is safe to use the product. Injuries caused by use of the yellow end of the CAEv2 on a gun range in reliance on Defendant's alleged misrepresentations thus are "the result of" unfair or deceptive practices for MCPA purposes. The other two categories of allegedly fraudulent conduct are not, however. Defendant's alleged misrepresentations regarding the efficacy of the CAEv2 are based on allegations that the CAEv2's design was defective (*i.e.*, stem is too short, too wide, and too stiff; opposing flange contacts tragus causing imperceptible loosening), and Defendant's alleged concealment of known dangers is substantively identical to Wilcox's failure to warn

claim.  *See Murphy*, 176 F. Supp. 2d at 483 n.9; *Sacks*, 1996 WL 780311, at *1-2. Those two categories of misrepresentations are essentially "disguised" defective design and failure to warn claims, and thus may not support a consumer protection claim under the MCPA.  *See Murphy*, 176 F. Supp. 2d at 483 n.9.

Regarding reliance, the Court has already found the evidence sufficient to establish that Wilcox personally relied on Defendant's alleged misrepresentations to the Army that the CAEv2's yellow end was safe for use on a gun range.  The evidence also is sufficient to show that misrepresentation substantially induced Wilcox's choice to wear the yellow end of the CAEv2 on the range when he needed to hear instructions from drill instructors or range noncommissioned officers.  *See* Wilcox Dep., ECF No. 27-11 at 2-6; *see also Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 796 (D. Md. 2013) (applying Maryland law) ("A consumer relies on a misrepresentation when the misrepresentation substantially induces the consumer's choice.").  Taken together, this expert evidence raises genuine disputes of material fact regarding the reliance element of Wilcox's MCPA claim.

### E. Punitive Damages (Count XVI)

Defendant moves for summary judgment on Wilcox's punitive damages claim on grounds that it is not a standalone cause of action under Maryland law and Defendant is entitled to summary judgment on the substantive claims on which it depends.  While it is true that Maryland does not recognize an independent claim for

punitive damages, *see Biggs v. Eaglewood Mortg., LLC*, 582 F. Supp. 2d 707, 711 n.5 (D. Md. 2008), punitive damages are an available form of relief for appropriate substantive claims that must be pled in a complaint, *Scott v. Jenkins*, 690 A.2d 1000, 1008 (Md. 1997). Based on the foregoing, Wilcox's separate cause of action for punitive damages will be deemed abandoned, and summary judgment on that independent claim granted in defendant's favor. However, this does not preclude Wilcox from pursuing punitive damages at trial to the extent permitted by Maryland law because he properly and specifically pled them in connection with the substantive claims that survived summary judgment here. *See, e.g.*, Wilcox Compl., ECF No. 5 at 1 (adopting and incorporating by reference the "allegations, claims, and requested relief as set forth in the [MDL] Master Long Form Complaint"); Master Long Form Compl., ECF No. 704 at 52, 55, 57, 61 (including general and punitive damages in prayer for relief on all counts and alleging requisite factual basis for the award).

    **F.**    **Loss of Consortium (*Count XIV*)**

Defendant argues that Paula Wilcox's loss of consortium claim fails because it is derivative of Wilcox's substantive claims, none of which can survive summary judgment. Because the Court has already found that most of Wilcox's substantive claims satisfy the summary judgment standard, Paula Wilcox's loss of consortium

claim remains. *See Oaks v. Connors*, 660 A.2d 423, 430 (Md. 1995) ("[A] loss of consortium claim is derivative of the injured spouse's claim for personal injury[.]").

Accordingly, Defendant's Motion for Summary Judgment, ECF No. 20, is **GRANTED IN PART and DENIED IN PART**, as follows:

1. Summary judgment is **GRANTED** in Defendant's favor with respect to Wilcox's independent claims for negligence *per se* (Count XII), unjust enrichment (Count XV), and punitive damages (Count XVI). However, this does not preclude Wilcox from offering Defendant's alleged statutory violations as evidence of negligence at trial or from pursuing punitive damages for his substantive claims to the extent permitted by Alabama law.

2. Summary judgment is **DENIED** in all other respects.

**SO ORDERED**, on this 5th day of June, 2023.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**